Slip Op. 23-36

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BRAL CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant. | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 20-00154 |

## OPINION AND ORDER

[Denying Plaintiff's motion for summary judgment and denying Defendant's cross-motion for summary judgment.]

Dated: March 20, 2023

Robert Kevin Williams, Clark Hill PLC, of Chicago, IL, for Plaintiff BRAL Corporation.

Justin R. Miller, Attorney-in-Charge, International Trade Field Office, Aimee Lee, Assistant Director, and Alexander J. Vanderweide, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., for Defendant United States. With them on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M. McCarthy, Director. Of counsel on the brief was Sabahat Chaudhary, Office of the Assistant Chief Counsel, U.S. Customs and Border Protection.

Choe-Groves, Judge: Plaintiff BRAL Corporation ("Plaintiff" or "BRAL") filed this action pursuant to 28 U.S.C. § 1581(a) contesting the denial of its protests by U.S. Customs and Border Protection ("Customs") concerning the assessment of

duties on twelve entries of plywood imported from the People's Republic of China ("China"). See Compl. at 1, ECF No. 7. Before the Court is Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"). Pl.'s Mot. Summary J., ECF No. 27. Also before the Court is Defendant's Cross-Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Cross-Motion"). Def.'s Cross-Mot. Summary J. Resp. Opp'n Pl.'s Mot. Summary J. ("Def.'s Cross-Mot."), ECF No. 28. Plaintiff filed Plaintiff's Response in Opposition to Defendant's Cross-Motion for Summary Judgment. Pl.'s Resp. Opp'n Def.'s Cross-Mot. Summary J., ECF No. 29. Defendant filed Defendant's Reply to Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment. Def.'s Reply Pl.'s Opp'n Def.'s Cross-Mot. Summary J., ECF No. 30. For the following reasons, the Court denies Plaintiff's Motion for Summary Judgment and denies Defendant's Cross-Motion for Summary Judgment.

## PROCEDURAL BACKGROUND

The Court presumes familiarity with the procedural history and recounts briefly the procedural history relevant to this opinion. See BRAL Corp. v. United States, 45 CIT __, __, 527 F. Supp. 3d 1358, 1360 (2021). This action concerns twelve entries of plywood imported from China by Plaintiff between 2017 and 2018. See Summons at 1–3, ECF No. 1; Compl. at 1. Plaintiff filed Protest No. 4101-19-100494 challenging the liquidation of three entries. Protest No. 4101-19-

100494, ECF No. 6-1.  Plaintiff filed Protest No. 4101-19-100808 challenging the liquidation of nine entries.  Protest No. 4101-19-100808, ECF No. 6-2.  Both protests alleged that the subject plywood imported from China had a latent defect that caused a melamine coating to separate from the subject plywood, warranting a reduced value due to defective merchandise pursuant to 19 C.F.R. § 158.12(a).  Id.; Protest No. 4101-19-100494.  Customs denied both protests on March 5, 2020.  Protest No. 4101-19-100494; Protest No. 4101-19-100808; see also Summons at 3.

## UNDISPUTED FACTS

The Parties have submitted separate statements of undisputed material facts.  Pl.'s R. 56.3 Statement Material Facts Not in Dispute ("Pl.'s SMF"), ECF No 27-2; Def.'s R. 56.3 Statement Undisputed Material Facts ("Def.'s SMF"), ECF No. 28.  Upon review of Plaintiff's Rule 56.3 Statement of Material Facts Not in Dispute, Defendant's Rule 56.3 Statement of Undisputed Material Facts, and supporting exhibits, the Court finds the following undisputed material facts:

Plaintiff imported the subject plywood from a Chinese manufacturer.  Pl.'s SMF ¶ 3 at 1; Def.'s SMF ¶¶ 1–2 at 1–2; Def.'s Resp. Pl.'s R. 56.3 Statement Material Facts Not in Dispute ("Def.'s SMF Resp.") ¶ 3 at 1, ECF No. 28; Pl.'s Resp. Def.'s R. 56.3 Statement Material Facts Not in Dispute ("Pl.'s SMF Resp.") ¶¶ 1–2 at 1, ECF No. 29-1.  The subject plywood consisted of seven-ply eucalyptus with the layers adhered by glue applied by heat and pressure, a hardwood face, and

a melamine coating applied to the face by an exterior glue.  Pl.'s SMF ¶ 2 at 1; Def.'s SMF ¶ 1 at 1; Def.'s SMF Resp. ¶ 2 at 1; Pl.'s SMF Resp. ¶ 1 at 1.  The Chinese manufacturer made, laminated, applied a hardwood face, and sanded the plywood to the desired dimensions.  Def.'s SMF ¶ 2 at 1–2; Pl.'s SMF Resp. ¶ 2 at 1.  The Chinese manufacturer used a subcontractor for additional laminating and gluing the melamine coating to the face of the plywood.  Def.'s SMF ¶ 2 at 1–2; Pl.'s SMF Resp. ¶ 2 at 1.  Plaintiff expected that the glue used to apply the melamine coating would be a waterproof phenolic resin, but the specific type of glue used was unknown to the Parties.  Def.'s SMF ¶¶ 3–4 at 2; Pl.'s SMF Resp. ¶¶ 3–4 at 1.  The subject plywood was produced in three sizes: 48" x 98" x ¾" ("48" sheets"), 15" x 98" x ¾" ("15" panels"), and 11" x 98" x ¾" ("11" panels").  Pl.'s SMF ¶ 1 at 1; Def.'s SMF ¶ 8 at 3; Def.'s SMF Resp. ¶ 1 at 1; Pl.'s SMF Resp. ¶ 8 at 1; see Pl's SMF at Ex. A ("Sample Invoices"), ECF No. 27-2.  After importation, Plaintiff sold the subject plywood to Transglobal Door, Inc. ("Transglobal") for use in the manufacturing of aftermarket roll-up doors and door panels for trucks, trailers, commercial vehicles, and delivery vehicles.  Pl.'s SMF ¶¶ 3–5 at 1; Def.'s SMF ¶ 6 at 2; Def.'s Resp. ¶¶ 3–5 at 1–2; Pl.'s SMF Resp. ¶ 6 at 1.

Development of the Chinese-made plywood began in approximately 2015 as a replacement for more expensive domestic plywood previously used by Transglobal in the manufacture of aftermarket roll-up doors and door panels. Pl.'s SMF ¶ 6 at 2; Def.'s SMF ¶ 12 at 3; Def.'s SMF Resp. ¶ 6 at 2; Pl.'s SMF Resp. ¶ 12 at 2. The development process involved the testing of a variety of plywood samples of various components and woods, including poplar, birch, and pine, produced by the Chinese manufacturer. Def.'s SMF ¶ 14 at 4; Pl.'s SMF Resp. at ¶ 14 at 2. Testing occurred over a six-month period and included subjecting the plywood samples to hundreds of hours in a salt-spray cabinet, hanging samples outside for multiple months, and manufacturing the samples into roll-up doors and installing the doors on trucks used by community organizations to gauge performance. Pl.'s SMF ¶¶ 9–11 at 2; Def.'s SMF ¶ 14 at 4; Def.'s Resp. ¶ 9–11 at 2–3; Pl.'s SMF Resp. ¶ 14 at 2. A sample was selected by the end of 2016 for production, though Plaintiff and Transglobal continued to import and test alternative samples of Chinese-made plywood after importation of the subject eucalyptus plywood began. Def.'s SMF ¶¶ 15–16 at 4–5; Pl.'s SMF Resp. ¶¶ 15–16 at 2.

Plaintiff did not open or inspect containers of the subject plywood when the containers arrived in the United States and forwarded the containers to

Transglobal. Def.'s SMF ¶ 18 at 5; Pl.'s SMF Resp. ¶ 18 at 2. Transglobal inspected the subject plywood for correct thickness and size but did not test samples of the subject plywood in a salt-spray cabinet or for quality of glue. Def.'s SMF ¶ 18 at 5; Pl.'s SMF Resp. ¶ 18 at 2. Manufacturing replacement roll-up doors and door panels required Transglobal to drill into the subject plywood's laminated face and to rivet hardware onto the plywood. Def.'s SMF ¶ 19 at 5; Pl.'s SMF Resp. ¶ 19 at 3. Roll-up doors and door panels were measured, inspected for surface defects, packaged, and shipped to customers within five days of completion. Def.'s SMF ¶ 19 at 5; Pl.'s SMF Resp. ¶ 19 at 3. Installation was done by the individual customer. Def.'s SMF ¶ 19 at 5; Pl.'s SMF Resp. ¶ 19 at 3. Transglobal offered a warranty on the roll-up doors and door panels manufactured with the subject plywood covering any delamination issue that occurred within one year of installation. Def.'s SMF ¶ 20 at 5; Pl.'s SMF Resp. ¶ 20 at 3.

      Transglobal began selling roll-up doors and door panels made from Chinese manufactured plywood in January 2017. Def.'s SMF ¶ 21 at 6; Pl.'s SMF Resp. ¶ 21 at 3. In approximately July 2017, Transglobal began using the subject plywood at issue in this litigation to manufacture roll-up doors and door panels. Pl.'s SMF ¶ 14 at 2; Def.'s SMF Resp. ¶ 14 at 3. In May 2017, Transglobal began to receive warranty claims from customers complaining that melamine faces were detaching from roll-up doors and door panels. Pl.'s SMF ¶ 16 at 3; Def.'s SMF

¶¶ 22–23 at 6; Def.'s SMF Resp. ¶ 16 at 3; Pl.'s SMF Resp. ¶¶ 22–23 at 3; see also Pl.'s SMF ¶ 15 at 3; Def.'s SMF Resp. ¶ 15 at 3.  Between May 9, 2017 and February 3, 2021, Transglobal received 161 warranty claims for delaminated doors and 171 warranty claims for delaminated panels.  Def.'s SMF ¶ 23 at 6; Pl.'s SMF Resp. ¶ 23 at 3.  The manufacturing of the roll-up doors and door panels associated with the warranty claims used 1,298 11" and 15" panels and 432⅔ 48" sheets.  Def.'s SMF ¶ 23 at 6; Pl.'s SMF Resp. ¶ 23 at 3.  Transglobal speculated that the allegedly defective plywood began to arrive in the United States in May or July 2017 and was manufactured into roll-up doors and door panels that were first sold in October or November 2017.  Def.'s SMF ¶ 22 at 6; Pl.'s SMF Resp. ¶ 22 at 3.  Transglobal did not become aware of problems with the subject plywood until March or April 2018.  Def.'s SMF ¶ 24 at 6; Pl.'s SMF Resp. ¶ 24 at 3.  Transglobal continued to manufacture and sell roll-up doors and door panels made with Chinese-manufactured plywood until as late as October 2018.  Def.'s SMF ¶ 25 at 6; Pl.'s SMF Resp. ¶ 25 at 3.

There were neither purchase orders for the subject plywood nor documents or communications from Plaintiff to the Chinese manufacturer providing the specific quantity and sizes or the requirements and components of the subject plywood.  Def.'s SMF ¶ 10 at 3; Pl.'s SMF Resp. ¶ 10 at 2.  The twelve entries at issue in this litigation included 7,889 48" sheets, 30,238 15" panels, and 5,616 11"

panels.  Def.'s SMF ¶ 32 at 8; Pl.'s SMF Resp. ¶ 32 at 3.  Transglobal used 5,900.86 48" sheets, 10,334.44 15" panels, and 680.30 11" panels to manufacture roll-up doors or door panels.  Def.'s SMF ¶ 32 at 8; Pl.'s SMF Resp. ¶ 32 at 3.

Plaintiff and Transglobal believed that the delamination issue was the result of Plaintiff's Chinese manufacturer or its subcontractor changing to a lower quality glue to attach the melamine coating to the subject plywood that became ineffective after being subjected to the freezing temperatures of winter and the subsequent thaw and drying of spring.  Def.'s SMF ¶ 26 at 6–7; Pl.'s SMF Resp. ¶ 26 at 3.  An undated "Letter of Statement" from Linyi Feixian Plywood Factory[1] to Transglobal conceded that Linyi Feixian Plywood Factory had determined that "the glue supplier" had lowered the quality of glue due to increasing costs.  Pl.'s SMF ¶ 18 at 3; Def.'s SMF ¶ 27 at 7; Def.'s SMF Resp. ¶ 18 at 4; Pl.'s SMF Resp. ¶ 27 at 3; Pl.'s SMF at Ex. L ("Linyi Feixian Plywood Factory's Letter of Statement").  Plaintiff ceased to import plywood from China in June 2018.  Def.'s SMF ¶ 28 at 7; Pl.'s SMF Resp. ¶ 28 at 3.

Though the Chinese manufacturer offered to replace the delaminated plywood, which is customary in the industry, neither Plaintiff nor Transglobal requested replacement plywood.  Def.'s SMF ¶ 29 at 7–8; Pl.'s SMF Resp. ¶ 29 at

---

[1]  It is not clear from the evidence before the Court if Linyi Feixian Plywood Factory is the Chinese manufacturer of the plywood.

3.  Plaintiff and Transglobal did not recover any costs from and did not file a legal action against the Chinese manufacturer or the supplier of the glue.  Def.'s SMF ¶ 30 at 8; Pl.'s SMF Resp. ¶ 30 at 3.  The subject plywood was not insured and Transglobal did not make a claim to its product liability insurer for the products manufactured with the subject plywood.  Def.'s SMF ¶ 31 at 8; Pl.'s SMF Resp. ¶ 31 at 3.  At the direction of counsel, Plaintiff and Transglobal did not attempt to resell any of the unused subject plywood.  Def.'s SMF ¶ 36 at 9; Pl.'s SMF Resp. ¶ 36 at 3.  Plaintiff claimed an 18 percent salvage value based on the value provided to Transglobal's President, Mark Schroeder, by Transglobal's domestic lumber supplier for the cost to purchase non-grade marine lumber for the making of crates and skids.  Def.'s SMF ¶ 34 at 8–9; Pl.'s SMF Resp. ¶ 34 at 3.  Schroeder later conceded that the wholesale or retail salvage value of the imported plywood would likely be 25–30 percent higher today.  Def.'s SMF ¶ 35 at 9; Pl.'s SMF Resp. ¶ 35 at 3; Def.'s Cross-Mot. at Ex. C Deposition Transcript of Mark Schroeder ("Schroeder Depo.") at 166–67, ECF No. 28-3.

Customs liquidated the entries and appraised the subject plywood on the basis of transaction value pursuant to 19 U.S.C. § 1401a(a)(1)(A), assessing an *ad valorem* duty rate.  Pl.'s SMF ¶ 22 at 3; Def.'s SMF Resp. ¶ 22 at 5.  Plaintiff protested the liquidation, arguing that the appraisal should be made with an allowance for the value of the defective merchandise pursuant to 19 C.F.R.

§ 158.12(a). Pl.'s SMF ¶ 23 at 4; Def.'s SMF Resp. ¶ 23 at 5; Protest No. 4101-19-100494; Protest No. 4101-19-100808. Customs denied Plaintiff's protests. Pl.'s SMF ¶ 27 at 4; Def.'s SMF Resp. ¶ 27 at 6.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(a). The Court will grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. USCIT R. 56(a). To raise a genuine issue of material fact, a party cannot rest upon mere allegations or denials and must point to sufficient supporting evidence for the claimed factual dispute to require resolution of the differing versions of the truth at trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986); Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731 F.2d 831, 835–36 (Fed. Cir. 1984).

## LEGAL STANDARD

Plaintiff entered the subject plywood based on transaction value pursuant to 19 U.S.C. § 1401a(a)(1)(A). Compl. at 3. Plaintiff's Complaint argues that Customs erred in denying Plaintiff's protests and in not granting an allowance pursuant to 19 C.F.R. § 158.12(a) reducing the appraised value of the subject plywood to 18 percent of the original value. Id. at 3. 19 C.F.R. § 158.12(a) provides that: "[m]erchandise which is subject to *ad valorem* or compound duties

and found by the port director to be partially damaged at the time of importation shall be appraised in its condition as imported, with an allowance made in the value to the extent of the damage." 19 C.F.R. § 158.12(a). The U.S. Court of Appeals for the Federal Circuit ("CAFC") has recognized that latent manufacturing defects can qualify as "'damage' for purposes of the regulation." Volkswagen of Am., Inc. v. United States, 540 F.3d 1324, 1331 (Fed. Cir. 2008); see also Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1371 (Fed. Cir. 2006). In order to claim an allowance under 19 C.F.R. § 158.12(a), "an importer must: (1) show that it contracted for 'defect-free' merchandise; (2) link the defective merchandise to specific entries; and (3) prove the amount of the allowance for each entry." Saab Cars USA, Inc., 434 F.3d at 1364–65 (citing Samsung Elecs. Am., Inc. v. United States ("Samsung Electronics I"), 106 F.3d 376, 379–80 (Fed. Cir. 1997) and Samsung Elecs. Am., Inc. v. United States ("Samsung Electronics II"), 195 F.3d 1367, 1368–69 (Fed. Cir. 1999)).

## DISCUSSION

Plaintiff argues that it can satisfy each of the required elements for an allowance under 19 C.F.R. § 158.12(a). Pl.'s Mem. Points & Auth. Supp. Pl.'s Mot. Summary J. ("Pl.'s Br.") at 4–7, ECF No. 27-1. Defendant contends that Plaintiff is unable to satisfy any of the requirements for an allowance under 19

C.F.R. § 158.12(a) and that this action should be dismissed. Def.'s Mem. Supp. Cross-Mot. Summary J. Resp. Opp'n to Pl.'s Mot. Summary J. ("Def.'s Br.") at 12–25, ECF No. 28.

### I.     Contracted for Defect-Free Merchandise

The first element of 19 C.F.R. § 158.12(a) requires Plaintiff to establish that it contracted for defect-free merchandise. Though no written contract has been provided detailing the specifications desired by Plaintiff for the subject plywood, Plaintiff contends that the Court can infer from the facts of the case that Plaintiff expected the Chinese manufacturer to provide defect-free plywood. Pl.'s Br. at 5–6; Pl.'s Resp. Opp'n Def.'s Cross-Mot. Summary J. ("Pl.'s Resp.") at 2, ECF No. 29. Plaintiff argues that the process of selecting a specific Chinese manufacturer and plywood involved testing and the installation of roll-up doors made with the sample plywood on vehicles to monitor performance under actual environmental conditions. Pl.'s Br. at 5–6. Plaintiff asserts that orders of larger quantities of plywood from the Chinese manufacturer following these tests relied on an expectation that subsequent plywood would meet the same standards as the samples. Id. at 6.

Defendant argues that no documents exist providing product specifications communicated between Plaintiff, Transglobal, and the Chinese manufacturer. Def.'s Br. at 14–15. Defendant contends that even after Plaintiff and Transglobal

completed testing of the plywood samples, there was no memorialization in writing that future shipments would exactly match those tested in every specification.  Id. at 15–16.  Defendant contends that Plaintiff's testing of plywood samples was not conducted under all actual environmental conditions and did not include exposure to a winter freeze or spring thaw.  Def.'s SMF Resp. ¶ 10 at 2–3.

　　　　Plaintiff asserts that the Court should infer that Plaintiff contracted for defect-free merchandise when the samples were tested and orders were placed based on those tests.  Plaintiff essentially asks the Court to determine if a contract for defect-free merchandise existed between Plaintiff and the Chinese manufacturer based on an implied contract not memorialized in writing.  "Whether a contract exists is a mixed question of law and fact."  See Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1368 (Fed. Cir. 2004).  In this case, a genuine issue of material fact exists regarding whether there was a contract, implied or otherwise, for defect-free plywood.  In Samsung Electronics America, Inc. v. United States ("Samsung I"), 106 F.3d 376 (Fed. Cir. 1997), the CAFC noted in considering whether a contract for defect-free goods existed that "[i]n interpreting a written contract, the intent of the parties, for instance as evidenced by the written instruments forming the contract, is of primary concern."  Id. at 379.  Giving similar weight to the intentions of the Plaintiff and the Chinese manufacturer in this case and considering their actions, the facts are disputed as to whether Plaintiff

and the Chinese manufacturer intended for the subject plywood to conform to certain specifications, to remain unchanged throughout the term of the agreement, and to be defect-free. The Parties agree that the subject merchandise was developed according to certain specifications, was tested extensively, and was produced based on samples. Pl.'s SMF ¶ 9–11 at 2; Def.'s SMF ¶¶ 14–16 at 4–5; Def.'s Resp. ¶¶ 9–11 at 2–3; Pl.'s SMF Resp. ¶¶ 14–16 at 2. The Parties disagree, however, as to whether an agreement existed that the subject merchandise would be manufactured according to certain specifications. Thus, because a genuine issue of material fact exists as to whether Plaintiff contracted for defect-free goods, summary judgment is not warranted for either Party on the first element.

## II.   Linking Defective Merchandise to Specific Entries

The second element of 19 C.F.R. § 158.12(a) requires Plaintiff to link the defective merchandise to specific entries. Plaintiff contends that it is not required to link specific products to specific entries because Plaintiff alleges that all plywood imported after May 2017 was defective. Pl.'s Br. at 6. Plaintiff claims that record evidence shows that the only plywood Plaintiff imported was the subject plywood and the quantity of that plywood remaining after production was halted. Id.; Pl.'s SMF at Ex. Q ("Item Stock Inquiry Reports"). Plaintiff argues that all of the plywood included in the protested entries was linked to the defect. Pl.'s Br. at 6.

Defendant argues that Plaintiff has not connected any of the alleged defects to the specific entries covered by Plaintiff's protests. Def.'s Br. at 17–23. Defendant alleges that Plaintiff imported five shipments of plywood from China prior to the first entry covered by Plaintiff's protests. Id. at 18–20 (citing Item Stock Inquiry Reports). Defendant contends that Plaintiff received two shipments after the first entry covered by Plaintiff's protests that were not included in Plaintiff's protests. Id. at 20 (citing Item Stock Inquiry Reports). Defendant argues that Plaintiff has provided no explanation as to why allowances under Section 158.12(a) were not sought for these entries if all entries after May 2017 were presumed to be defective. Id. at 20–21. Defendant asserts that the number of warranty claims received by Plaintiff complaining of delamination was relatively small in comparison to the amount of plywood covered by the protested entries. Id. at 21–22; see Def.'s Cross-Mot. at Ex. H ("Warranty Claims"). Defendant notes that a small number of delamination complaints pre-dated the entries covered by Plaintiff's protests or fell within a period in which it was unlikely that products made from the subject plywood were available for market. Id. at 22.

Section 158.12(a) requires a party seeking an allowance to show a link between the defective merchandise and specific entries. Saab Cars USA, Inc., 434 F.3d at 1363–64. Because Customs appraises the value of entries individually at

the time of importation and assesses duties based on the appraised value before liquidation, establishing a link is necessary for appropriate refunds to be assigned to duties made. Samsung Electronics II, 195 F.3d at 1371.

In Fabil Manufacturing Co. v. United States ("Fabil"), 237 F.3d 1335 (Fed. Cir. 2001), the CAFC considered a similar question of whether a party alleging that entries were defective in their entirety must link specific defective merchandise to specific entries. Fabil, 237 F.3d at 1339. Fabil involved jackets bearing a corporate logo that were ordered to be "machine washable." Id. at 1336. After the jackets were imported, Fabil discovered a latent defect that caused the logos to disintegrate and their colors to run when washed. Id. Because of the defect, Fabil's customers returned the jackets, which were disposed of at a loss. Id. The CAFC held that under the facts of Fabil, there was no reason to require the plaintiff "to tie the allegedly defective merchandise to any entries or group of entries without which proof the Court (and Customs) cannot determine whether contested merchandise actually contained a defect at the time of 'importation.'" Id. at 1339 (internal quotation and edit omitted).

Similar to Fabil, Plaintiff alleges that all of the imported merchandise was defective. Pl.'s Br. at 6. The Parties agree that a portion of the roll-up doors and door panels manufactured with the subject plywood were the subject of warranty claims or delamination complaints. See Pl.'s SMF ¶ 16 at 3; Def.'s SMF ¶¶ 22–23

at 6; Def.'s SMF Resp. ¶ 16 at 3; Pl.'s SMF Resp. ¶¶ 22–23 at 3; see Pl.'s SMF ¶ 15 at 3; Def.'s SMF Resp. ¶ 15 at 3. The Parties dispute whether all of the plywood was defective. Because genuine issues of material fact exist as to whether all of the subject merchandise was defective, the Court cannot determine as a matter of law that Plaintiff connected the allegedly defective plywood to the subject entries. Summary judgment is not appropriate for either Party on the second element of Section 158.12(a).

### III. Amount of Allowance for Each Entry

The third element of 19 C.F.R. § 158.12(a) requires Plaintiff to establish the amount of allowance for each entry. Plaintiff alleges that it is entitled to an allowance for all merchandise covered by the subject entries in the amount of a reduction in the appraised value to 18 percent of the original value of the subject plywood. Pl.'s Br. at 6–7; Compl. at 2–3. Plaintiff contends that 18 percent represents the salvage value for the plywood if used to build crates and skids. Pl.'s Br. at 6–7. Defendant alleges that Plaintiff has not substantiated its claim of an 18 percent salvage value. Def.'s Br. at 23–25. Defendant also argues that even if 18 percent were an appropriate salvage value, Plaintiff has not established that it should be applied to all of the imported plywood included in the subject entries. Id. at 25.

Plaintiff's claim for an 18 percent salvage value is based on a representation made by Transglobal's domestic lumber supplier to Transglobal's President, Mark Schroeder, regarding the cost to purchase non-grade marine lumber for the making of crates and skids. Def.'s SMF ¶ 34 at 8–9; Pl.'s SMF Resp. ¶ 34 at 3; Def.'s Cross-Mot. at Ex. B Deposition Transcript of Alison Dunbar ("A. Dunbar Depo.") at 11, 29–33, ECF No. 28-2; Schroeder Depo. at 158–59. No other support has been offered for the 18 percent value and Plaintiff did not attempt to resell the unused plywood. Def.'s SMF ¶ 36 at 9; Pl.'s SMF Resp. ¶ 36 at 3; A. Dunbar Depo. at 26–27; Schroeder Depo. at 85–86, 160–61. During his deposition for this case, however, the Court observes that potentially contrary evidence was elicited in Schroeder's statement that the value of the plywood had likely increased by 25 to 30 percent. Schroeder Depo. at 166–67. Because there remain genuine issues of material fact as to the value of the subject plywood and whether an allowance should be applied to all subject merchandise, summary judgment is not appropriate for either Party on the third element.

## CONCLUSION

For the foregoing reasons, the Court concludes that genuine issues of material fact exist and that summary judgment is not warranted. Accordingly, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 27, is denied; and it is further

**ORDERED** that Defendant's Cross-Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment, ECF No. 28, is denied; and it is further

**ORDERED** that a status conference will be scheduled with the Parties to discuss pre-trial matters.

                                                     /s/   Jennifer Choe-Groves
                                                          Jennifer Choe-Groves, Judge

Dated:   March 20 2023
         New York, New York